IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    Plaintiff,

vs.                                                          Crim. No. 04-2575 JP

**JOSEPH WILLIAM KEAN,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

On May 19, 2005, Defendant Joseph William Kean filed a Motion to Suppress Statements and Memorandum of Law. (Doc. No. 13). The Defendant asked the Court to suppress any and all statements that the Defendant made while in custody following his arrest. Specifically, the Defendant argues that after his arrest he was not advised of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436 (1966), that his incriminating statements made to law enforcement officers were involuntary, and that he was denied the right to counsel, in violation of the Fifth and Sixth Amendments to the United States Constitution.

The Court held an evidentiary hearing on the Defendant's motion to suppress on September 8, 2005. At the hearing, the Defendant was present and was represented by Attorney Jerry Herrera. The United States was represented by Assistant United States Attorney Amy Sirignano.

The Court finds that the Defendant's testimony at the hearing was not credible with respect to his allegations that he was not informed of his *Miranda* rights after his arrest on May 19, 2004. The Court finds that the facts are as stated below in the "Factual Background."

Having considered the briefs, testimony, exhibits, and oral arguments of counsel, the Court concludes that Defendant's Motion to Suppress Statements should be denied.

## I.   Factual Background

On the afternoon of May 19, 2004, the Albuquerque Police Department ("APD") dispatched Officers Alfred Walck and Gerald Roach to the residence at 11109 Claremont NE, Albuquerque, New Mexico in response to a suspicious person call made by a neighbor, Robert Elliot. Officer Walck arrived at the scene and saw a grey Chevy van parked in front of the residence with a male, later identified as Rayford Tedford, sitting in the driver's seat.

Officer Walck made Mr. Tedford exit the van and place his hands on the bumper of the patrol car. Shortly thereafter another male, later identified as Raymond Hernandez, walked out from the backyard of the residence. Officer Walck detained Mr. Hernandez. About thirty seconds after Mr. Hernandez was seen walking from the backyard, another male, later identified as the Defendant, came from the backyard. The Defendant fled when he saw Officer Walck.

Meanwhile, Officer Roach handcuffed Mr. Tedford and Mr. Hernandez. Officer Roach removed from Mr. Hernandez's back pants pocket a locking blade knife which belonged to a resident of the house at 111901 Claremont NE. The officers also found five rifles, a 12" hunting knife, and a garbage can filled with miscellaneous property laying next to a partially open rear sliding door of the house. Another resident of the house later identified these items as his personal property.

At about 8:00 p.m. that evening, a neighbor saw a man jump a fence at 11105 Claremont NE.  The man continued to walk down the street without shoes.  The man was identified by Mr. Elliot as the third suspect, and Mr. Elliot followed him to 3100 Jane Place NE.

After APD was informed of the third suspect's whereabouts, Officer Jason Peck went to 3100 Jane Place NE, arrested the Defendant, and placed him in the patrol car.  Officer Peck testified that once the Defendant was in the patrol car, he then informed the Defendant of his *Miranda* rights.   After being advised of his *Miranda rights,* the Defendant told Officer Peck that he had a drug problem, was a convicted felon, and wanted to speak with an attorney.[1]  Officer Peck then obtained biographical information from the Defendant.

Officer Peck transported the Defendant to the APD Foothills Substation where Officer Walck identified Defendant as the third suspect.  While in a holding cell, the Defendant asked to speak to a ROP Detective.[2]  In compliance with this request, the Defendant was allowed to talk with ROP Detective Kevin Gagne by telephone.

The Defendant told Detective Gagne that he wanted to "work off" his charges.  Detective Gagne responded by telling the Defendant that he could not offer any promises, and he reminded the Defendant that he had already asked to speak with an attorney.  The Defendant then said that he wanted to make a statement, but that he would not make a statement to the burglary detectives.  Detective Gagne, however, told the Defendant that he was reluctant to drive to the substation only to have the Defendant recant and not tell the truth.  Defendant responded that he was unsure whether he would make a statement at that time.

---

[1] Defendant also testified that he requested medical attention at this time.

[2] The acronym ROP stands for "Repeat Offender Program."

Detective Gagne asked to speak with Officer Peck and told Officer Peck to again advise the Defendant of his *Miranda* rights. While listening on the telephone, Detective Gagne overheard Officer Peck read Defendant his *Miranda* rights. Next, Officer Peck advised Detective Gagne that he would call Detective Gagne later and hung up the telephone.

The Defendant told Officer Peck that he would not make a statement if he had to go to jail that night. Officer Peck responded that the Defendant was going to be booked that night and the Defendant decided not to make a statement.

Officer Peck drove the Defendant to the Metropolitan Detention Center, and in route the Defendant told Officer Peck that he wished he had waited until dark to walk away so he would not have been caught. The Defendant also stated that he heard the helicopter searching for him and joked that the police dogs were looking for him in the wrong place. Finally, the Defendant stated that he steals guns and sells them for $ 100 each to support his methamphetamine habit.

Officer Peck testified that he did not question the Defendant about the burglary and that the Defendant made these statements voluntarily. The Defendant also admitted at the September 8, 2005 hearing that he was not questioned by the officers regarding the burglary at 11109 Claremont NE. Furthermore, the Defendant testified that his statements were not coerced in any way. On December 8, 2004, the Defendant was indicted and charged with possession of a firearm by a felon, 18 U.S.C. § 922(g)(1) (2005), and with possession of a stolen firearm, 18 U.S.C. § 922(j).

## II.  Discussion

The Defendant claims that he was not read his *Miranda* rights, and he correctly points out that neither Officer Peck's Criminal Complaint (Exhibit B) nor Officer Peck's State of New Mexico Supplemental Report (Exhibit A) states that Officer Peck read Defendant his *Miranda*

rights.  The Defendant also argues that his incriminating statements were involuntary because he did not voluntarily waive his right to remain silent.  The Defendant further contends that the statements were made despite his request for counsel, which was not honored by APD officers.

The United States claims that Officer Peck informed the Defendant of his *Miranda* rights on two occasions, and further argues that the incriminating statements were voluntarily made.  Furthermore, the United States argues that even if the Defendant was not read his *Miranda* rights, the requirements of *Miranda* do not apply because the Defendant was not subject to interrogation.

In *Miranda,* the Supreme Court established that an accused must be informed of and must waive certain rights before any statement made in custodial interrogation will be deemed voluntarily made under the Fifth Amendment.  *See, e.g.*, *United States v. Bautista*, 145 F.3d 1140 (10th Cir. 1998).  As stated above, the Court finds that the Defendant was apprised of his *Miranda* rights on two different occasions on the night in question.  Furthermore, even if the Defendant was not informed of his *Miranda* rights, the requirements of *Miranda* would not render the Defendant's incriminating statements involuntary in this case.

In order for the procedural requirements of *Miranda* to apply, the Defendant must have been both in "custody" and subject to "interrogation."  *Bautista*, 145 F.3d at 1147.  Here, it is clear that Defendant was in a custodial situation once he was handcuffed and placed in the police car after his arrest at 3100 Jane Place, NE.  However, the Defendant was never subjected to interrogation.

In *Rhode Island v. Innis*, 446 U.S. 291 (1980), the Supreme Court determined that 'interrogation' under *Miranda* includes not only express questioning, but also "words or actions on the part of police officers that they should have known were reasonably likely to elicit an

incriminating response." *Innis*, 446 U.S. at 302. An interrogation has not occurred when a police officer makes "no accusatory statements or questions," and, "[o]nly spontaneous, unprovoked statements [are] involved." *United States v. De La Luz Gallegos*, 738 F.2d 378, 380-81 (10th Cir. 1984). Therefore, "[i]f a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible." *United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993); *See also United States v. Torres-Guevara*, 147 F.3d 1261, 1266 (10th Cir. 1998).

In this case the Defendant made incriminating statements without prompting by the words or actions of Officer Peck or Detective Gagne. The biographical and routine booking questions Officer Peck asked of the Defendant also do not constitute interrogation because they were not designed to gather incriminating information. *See*, *e.g., United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir. 1993). Therefore, the procedural safeguards of *Miranda* were not applicable in this situation.

Furthermore, the fact that the Defendant had requested counsel does not change this analysis. As stated above, the Defendant requested the assistance of counsel after Officer Peck arrested the Defendant and advised the Defendant of his *Miranda* rights. Once the Defendant invoked his right to counsel, he could not be subjected to custodial interrogation in the absence of an attorney. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). However, "[s]imply because a suspect has a requested an attorney is not itself sufficient to prohibit the use of spontaneous declarations not brought about by the prompting of law enforcement officials." *United States v. De La Luz Gallegos*, 738 F.2d 378 (10th Cir. 1984).

In this case, the Defendant waived a previously invoked right to counsel by voluntarily initiating further communication with Officers Peck and Detective Gagne. *See Fox v. Ward*, 200

F.3d 1286, 1298 (10th Cir. 2000).  The Defendant's statements were therefore voluntary under the Fifth Amendment and the requirements of *Miranda*, and were not made in violation of his Fifth Amendment right to counsel.[3]

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Statements (Doc. No. 13) is DENIED.

_____
UNITED STATES DISTRICT JUDGE

---

[3] The Court also notes that the Defendant's statements were not made in violation of his Sixth Amendment right to counsel.  The Sixth Amendment right to counsel attaches after adversary proceedings have commenced.  *Texas v. Cobb*, 532 U.S. 162 (2001).  The statements in issue were made before the Defendant was indicted or formally charged.